**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **SHENZHEN AJI FASHION TECHNOLOGY CO. LTD.,**<br><br>Plaintiff,<br><br>v.<br><br>**WHALECO INC. et al.**<br><br>Defendants. | **CIVIL ACTION NO. 1:24-cv-11494**<br><br>Judge: Hon. Myong J. Joun |

**DEFENDANT WHALECO INC.'S MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION TO DISMISS**

## I.      INTRODUCTION

Plaintiff Shenzhen Aji Fashion Technology Co. Ltd. initiated this trademark and copyright infringement action against Defendant WhaleCo Inc., owner and operator of the Temu.com e-commerce platform, and four independent sellers that sold allegedly infringing products on Temu.com. Plaintiff seeks to hold WhaleCo liable for the alleged independent acts of third-party sellers. But Plaintiff's theories of liability fail under well-established principles of trademark and copyright law applied to platform operators such as WhaleCo. And worse, while Plaintiff's claims largely derive from its purported ownership of copyrighted works, Plaintiff has not alleged the existence of any registered copyright or other facts to support an exemption from the threshold "registration" requirement. Accordingly, as described herein, all claims asserted against WhaleCo should be dismissed.

## II.      FACTUAL BACKGROUND

WhaleCo is a Boston-headquartered company that operates Temu.com, an online e-commerce platform that allows third-party sellers to list and sell products online. *See* Doc No. 1 at

¶¶ 26–27. Plaintiff does not dispute that the products listed on Temu.com are manufactured, listed, and sold by third-party sellers (not WhaleCo). *Id*. at ¶¶ 26–27, 31, 33; Doc No. 1-3 at 2; Doc No. 1-5 at 2; Doc No. 1-6 at 2; Doc No. 1-7 at 2. Specifically, Plaintiff acknowledges that third-party sellers (or other third parties) make the products, third-party sellers list the products for sale on Temu.com, and third-party sellers create all content relating to the product listings, including "descriptions of products" and "media" associated with the product listings. Doc No. 1 at ¶ 27 (alleging third-party sellers "register an account" with Temu.com, "source and supply" the product, and "provide . . . written descriptions for the products and media").

Plaintiff alleges that it makes and sells clothing under the ROSEGAL trademark. Doc No. 1 at ¶¶ 11–12. Plaintiff further alleges these products are sold through Plaintiff's own website and "through selected licensed dealers," including by various third-party sellers licensed to sell Plaintiff's products on Temu.com. *Id*. at ¶ 19. Plaintiff alleges that it identified four unlicensed third-party sellers—Defendants OYIJIA, Necoo, OversizeLAPA, and ALUBO ("Seller Defendants")—that allegedly listed products on Temu.com bearing Plaintiff's ROSEGAL trademark and using Plaintiff's allegedly copyrighted photographs. *Id*. at ¶¶ 31, 33, 36. Plaintiff alleges that when the Seller Defendants created the accused product listings on Temu.com, they allegedly used Plaintiff's product listing photos, but removed the ROSEGAL watermarks and "digitally re-placed" the mark onto different portions of the photographs. *See id*. at ¶¶ 31, 33. Plaintiff does not allege that WhaleCo took any part in the creation of the accused product listings or any digital alteration of photos. *See id*. at ¶¶ 91–99 (claim for removing "copyright management information" asserted only against Seller Defendants, not WhaleCo).

Plaintiff alleges that it approached WhaleCo about the accused product listings, but WhaleCo did not take down the listings. *See* Doc No. 1 at ¶¶ 32, 34. The correspondence attached

to the Complaint, however, reveals that WhaleCo promptly responded and asked the anonymous email transmitter for basic information to verify the authenticity of the report, including the name and contact information of the transmitter and confirmation that the transmitter is authorized to act on behalf the owner of the intellectual property rights. Doc No. 1-4; Doc No. 1-8 at 2. This information is specifically detailed in the Digital Millenium Copyright Act ("DMCA"), which governs platform takedown notice requirements. *See* 17 U.S.C. § 512(c)(3)(A) (listing requirements for a DMCA takedown notice to be effective, including identification of the transmitter and their contact information and a signed statement from the transmitter attesting to authority to act on behalf of the owner).

Plaintiff does not allege further correspondence with WhaleCo in this respect. Thereafter, Plaintiff filed the instant action in the Northern District of Illinois, naming the four Seller Defendants and WhaleCo as defendants. Doc No. 1 at ¶¶ 3–7. Plaintiff alleges eight claims—some against WhaleCo, some against Seller Defendants, and some against all Defendants. *See id.* at ¶¶ 39–99. As relevant to this Motion, WhaleCo is named as a defendant in Counts I through Counts VII (but not Count VIII, which relates to the alleged alterations to the listing photos).

     I.     Trademark Infringement and Counterfeiting (All Defendants)

    II.     False Designation of Origin, Passing Off, and Unfair Competition (All Defendants)

   III.     Violation of Illinois Uniform Deceptive Trade Practice Act (All Defendants)

   IV.     Contributory Trademark Infringement and Unfair Competition (WhaleCo only)

    V.     Vicarious Trademark Infringement (WhaleCo only)

   VI.     Copyright Infringement (All Defendants)

  VII.     Vicarious Copyright Infringement (WhaleCo only)

VIII.     Violation of Digital Millennium Copyright Act (DMCA) (Seller Defendants only)

After Plaintiff initiated this action, Plaintiff served WhaleCo—but not the Seller Defendants—and WhaleCo timely moved to transfer venue to the District of Massachusetts. *See*

Doc No. 7. On June 5, 2024, the Illinois federal court granted the motion and transferred the case to this Court. *See* Doc No. 33. Although Plaintiff filed this lawsuit over nine months ago, it is unclear if Plaintiff has made any attempt to serve the Seller Defendants.

## III.    LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient facts "to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim must be facially plausible to survive a motion to dismiss. *Id.* A plausible claim is one "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While detailed factual allegations are not necessarily required, the plaintiff must provide more than mere labels and conclusions because such recitations are not subject to the presumption of truth. *Twombly*, 550 U.S. at 555. "In conducting this review, the Court 'ignores statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements, then takes the complaint's well-pled (*i.e.*, non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and sees if they plausibly narrate a claim for relief.'" *Premera Blue Cross v. Takeda Pharm. Co.*, No. 23-cv-11254-MJJ, 2023 U.S. Dist. LEXIS 234589, at *3 (D. Mass. Nov. 20, 2023) (quoting *Sonoiki v. Harvard Univ.*, 37 F.4th 691, 703 (1st Cir. 2022)).

## IV.    ARGUMENT

### A. Plaintiff Fails to Allege "Use in Commerce" by WhaleCo Sufficient to Support a Claim for Direct Infringement Under the Lanham Act (Counts I and II)

"Use in commerce" is a necessary element for direct infringement under Lanham Act Sections 1114 and 1125(a). *See* 15 U.S.C. §§ 1114(1), 1125(a). It is well settled that merely providing a platform for third parties to publish content or sell goods does not satisfy the "use in commerce" element under the Lanham Act. *See Tiffany (NJ) Inc. v. eBay, Inc.*, 600 F.3d 93, 102–

03, 114 (2d Cir. 2010) (affirming district court judgment that eBay cannot be liable for direct infringement based on the actions of third-party sellers listing counterfeit goods on the platform).

District courts routinely dismiss such claims against platform providers on the pleadings where the third-party seller "placed" the infringing mark on the product listing, not the platform provider. *See Car-Freshner Corp. v. Meta Platforms, Inc.*, No. 5:22-cv-1305, 2023 U.S. Dist. LEXIS 199408, at *59 (N.D.N.Y. Nov. 7, 2023) (dismissing direct infringement claims against Meta premised on infringing goods sold by third parties on Facebook Marketplace; "Although Plaintiffs allege that Meta did not promptly remove the infringing products from its websites, there are no allegations that Meta 'placed' the infringing marks on any goods."); *Lopez v. Bonanza.com*, No. 17-cv-8493, 2019 U.S. Dist. LEXIS 170715, at *20–21 (S.D.N.Y. Sep. 30, 2019) (dismissing direct infringement claims against platform providers where they only provided web hosting and online retail services to third parties, and the third parties were the ones who "placed" the mark on the accused products); *Lops v. YouTube, LLC*, No. 3:22-cv-843, 2023 U.S. Dist. LEXIS 36206, at *5–6 (D. Conn. Mar. 3, 2023) ("YouTube cannot be subject to direct liability for trademark infringement based on videos uploaded by third parties.").

Plaintiff's vague and conclusory allegations regarding WhaleCo's alleged involvement in payment processing and pricing of the allegedly infringing products (*see* Doc No. 1 at ¶¶ 28-30) are insufficient to plead "use in commerce" by WhaleCo for the simple reason that they describe the standard operations and services provided by an e-commerce platform hosting third-party listings. *See Tre Milano, LLC v. Amazon.com, Inc.*, No. B234753, 2012 Cal. App. Unpub. LEXIS 6163, at *36–38 (Cal. Ct. App. Aug. 22, 2012) (Amazon not directly liable because it is a transactional intermediary, not a direct seller); *Lopez*, 2019 U.S. Dist. LEXIS 170715, at *20 (Pixels not directly liable for trademark infringement where it collected payments from the buyers

and sent profits to the artists). A direct infringement claim in this context is only viable where the defendant itself (not the third party) retains the "sole discretion" for setting prices, creating marketing, and selling the goods, such as in the context of a consignment relationship. *See, e.g.*, *Chanel, Inc. v. RealReal, Inc.*, 449 F. Supp. 3d 422, 441 (S.D.N.Y. 2020) (consignment store potentially liable for direct infringement where it had "sole discretion" with respect to the listing, creating the marketing, setting the prices, and approval for sale). Similarly, here, Plaintiff's conclusory allegations are insufficient to plead "use in commerce" where WhaleCo's involvement is limited to the operation of the Temu.com platform.

Indeed, in a similar case against WhaleCo in the Northern District of Illinois, the district court dismissed the plaintiff's direct infringement claims under the Lanham Act that were premised on products listed by third parties on Temu.com because the plaintiff failed to allege plausible facts that WhaleCo was "actively involved in the infringing conduct[] itself." *MaiBo (shenzhen) Ke Ji You Xian Gong Si v. WhaleCo, Inc.*, No. 23-cv-2793, 2024 U.S. Dist. LEXIS 77462, at *6–8 (N.D. Ill. Apr. 29, 2024). Similarly, here, Plaintiff alleges that Seller Defendants created the accused product listings, listed the accused products on Temu.com, and sold the accused products on Temu.com. Doc No. 1 at ¶¶ 27, 31, 33. Plaintiff does not allege that WhaleCo "placed" the ROSEGAL mark in the accused product listings or otherwise engaged in any conduct other than operating an e-commerce platform for third-party sellers to list goods for sale. Notably, Plaintiff only alleges that the Seller Defendants—not WhaleCo—digitally altered the listing photos by allegedly removing the watermarks and placing the ROSEGAL mark into the product listing photos. Doc No. 1 at ¶¶ 91–99 (claim for removing "copyright management information" asserted only against Seller Defendants, not WhaleCo).

Therefore, because Plaintiff has not alleged any plausible facts to infer that WhaleCo used the ROSEGAL mark in commerce, Plaintiff's claims of direct infringement under the Lanham Act against WhaleCo (Counts I and II) should be dismissed.

**B. Plaintiff Fails to Allege Sufficient Facts to Support a Claim for Contributory Infringement Under the Lanham Act (Count IV)**

To state a claim for contributory trademark infringement, a plaintiff must allege the defendant either (1) intentionally induced the primary infringer to infringe, or (2) continued to supply its product to one whom it knows or has reason to know is engaging in trademark infringement. *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 854 (1982).

Regarding the first prong, Plaintiff fails to allege any plausible facts to suggest that WhaleCo intentionally induced the Seller Defendants to commit any infringing acts. Plaintiff's allegation that "WhaleCo actively and intentionally encouraged and induced the Seller Defendants to infringe" (Doc No. 1 at ¶ 61) is merely a "legal conclusion" and unsupported by any "specific acts" of inducement apart from merely operating an e-commerce platform. *See Lopez*, 2019 U.S. Dist. LEXIS 170715, at *33 ("Plaintiff fails [] to allege any 'specific acts' that Microsoft, Hostway, or GoDaddy have taken to encourage the alleged infringement. [Plaintiff's] allegations amount to nothing more than legal conclusions[.]").

Regarding the second prong, Plaintiff fails to plausibly allege that WhaleCo had sufficient "knowledge" or "reason to know" that the Seller Defendants were allegedly infringing the ROSEGAL mark. While Plaintiff alleges it submitted two notices to WhaleCo regarding the accused product listings, the notices not only failed to identify who was purporting to act on behalf of the ROSEGAL mark owner (despite several requests from WhaleCo to verify the legitimacy of the claim), the notices also did not sufficiently inform WhaleCo that the links even contained the asserted ROSEGAL mark. *See* Doc No. 1 at ¶¶ 32, 34; Doc No. 1-4; Doc No. 1-8 at 2–3. For

example, Plaintiff's notices were sent from the email address "legal@rosegal.com" and were either unsigned or signed by the "Rosegal Team." *See* Doc No. 1-4; Doc No. 1-8 at 2. However, the notices failed to provide any identifying information or information connecting the "Rosegal Team" with Shenzhen Alice E-Commerce Co. (the owner of the ROSEGAL mark as indicated on the registration certificate) or the Plaintiff, the assignee of the ROSEGAL mark. *See* Doc No. 1-1 at 2, 4; Doc No. 1-4; Doc No. 1-8 at 2–3. Further, there were no screenshots or other information that indicated that the links contained the asserted ROSEGAL mark. Indeed, one product listing does not seem to have the ROSEGAL mark in the product listing photo, *see* Doc No. 1-7 at 2, and in the others, the purported ROSEGAL mark is so tiny and obscured that any reasonable viewer would be forgiven for not spotting it even upon close review. *See* Doc No. 1-6 at 2 (illegible and obscured partial mark on model's left arm); Doc No. 1-5 at 2 (mark obscured on model's hip and blended with the black-and-white print pattern); Doc No. 1-3 at 2 (mark on model's right leg, blended with the print pattern).

Despite this, Plaintiff's takedown notices only generally asserted that the mark is in the listings, but without explaining how or where, for example, by providing screenshots or other indications to assist WhaleCo. *See* Doc No. 1-4; Doc No. 1-8 at 2–3. Courts rightly decline to impute knowledge on the part of a platform provider to support contributory infringement where the trademark owner failed to put the platform provider on "particularized knowledge," especially where otherwise the alleged use of the mark is difficult to locate. *See Kifle v. YouTube LLC*, No. 21-cv-01752, 2022 U.S. Dist. LEXIS 20014, at *17 (N.D. Cal. Feb. 3, 2022) (dismissing contributory infringement claim where cease-and-desist letters merely identified URLs of videos allegedly using the trademark, but failed to "clearly" identify use of the mark—*e.g.*, "no screenshots or timestamps to indicate to YouTube that the links contained the trademark"—and

thus declining to impute "particularized knowledge" of infringement by YouTube); *id*. at ECF No. 88 at 4–5 (later dismissing the claim with prejudice).

### C. Plaintiff's Conclusory Allegations Are Insufficient to Allege Vicarious Trademark Infringement (Count V)

For a claim of vicarious trademark liability, Plaintiff must plausibly allege "that the defendant and the infringer have an apparent or actual partnership, have authority to bind one another in transactions with third parties or exercise joint ownership or control over the infringing product." *Hard Rock Cafe Licensing Corp. v. Concession Servs., Inc.*, 955 F.2d 1143, 1150 (7th Cir. 1992); *Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d 144, 165 (4th Cir. 2012); *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 807 (9th Cir. 2007); *Kelly-Brown v. Winfrey*, 717 F.3d 295, 314 (2d Cir. 2013). Plaintiff has failed to allege any of these critical facts required to impute vicarious trademark infringement liability on WhaleCo.

Plaintiff alleges nothing more than WhaleCo's provision of standard e-commerce services to the Seller Defendants, such as entering into Terms of Service and a Seller Services Agreement and providing payment processing services. Doc No. 1 at ¶¶ 67–70. Merely alleging a standard platform relationship with a purported infringer and alleging entitlement to vicarious liability is insufficient to state a claim for vicarious trademark infringement. *See Lopez*, 2019 U.S. Dist. LEXIS 170715, at *29–31 (finding plaintiff's allegations that merely recited that the platform defendants were in a partnership with accused infringers were insufficient to survive a motion to dismiss); *Coach, Inc. v. Swap Shop, Inc.*, 916 F. Supp. 2d 1271, 1279–80 (S.D. Fla. 2012) (dismissing claim for vicarious trademark infringement because plaintiff "failed to allege factual allegations that demonstrate[d] the requisite partnership between the allegedly infringing Vendor Defendants and the Swap Shop Management, Landlord and Principal Defendants").

Nothing in Plaintiff's allegations suggest or infer an "apparent or actual partnership," "authority to bind one another," or "joint ownership or control over the infringing product." Lastly, to the extent Plaintiff purports to rely on some suggestion that WhaleCo refers to Seller Defendants as "seller partners" (*e.g.*, Doc No. 1 at ¶ 27), courts confirm that "vague, puffery-like references to a 'partnership' between [] companies and website merchants are not enough to support vicarious liability." *Gucci Am., Inc. v. Frontline Processing Corp.*, 721 F. Supp. 2d 228, 247 (S.D.N.Y. 2010); *Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*, 591 F. Supp. 2d 1098, 1113 n.17 (N.D. Cal. 2008) ("[O]ff-hand references to customers as 'partners' [are] insufficient to exhibit the type of behavior and relationship that can be considered an actual or apparent partnership.").

### D. Plaintiff Fails to Allege Viable Copyright Infringement Claims Against WhaleCo (Counts VI and VII)

#### 1. Plaintiff Fails to Satisfy the Statutory Prerequisite of Section 411(a)

To state a valid claim of copyright infringement, plaintiff must prove both (1) ownership of a valid copyright, and (2) infringement of that copyright by defendant. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991). Under the ownership element, Plaintiff is required to show that the asserted works are registered in accordance with 17 U.S.C. § 411(a). ("[N]o civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made[.]"). Copyright registration is thus akin to an administrative exhaustion requirement that the owner must satisfy before suing to enforce ownership rights. *Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*, 586 U.S. 296, 301 (2019).

Here, Plaintiff has not alleged that it has registered the asserted works with the Copyright Office, nor has Plaintiff submitted evidence of copyright registration, so it has not met this threshold requirement and thus its direct and vicarious copyright infringement claims (Counts VI

and VII) should be dismissed. *See DeCastro v. Abrams*, No. 1:22-cv-11421-ABD, 2023 U.S. Dist.
LEXIS 118575, at *7 (D. Mass. July 11, 2023) (granting defendants' motion to dismiss copyright
infringement claim where plaintiff "failed to plead sufficient facts to support a finding that he ha[d]
met the copyright registration requirement which is a prerequisite to bringing suit").[1]

To the extent Plaintiff argues that it is exempt from the § 411(a) registration prerequisite,
Plaintiff's claims for copyright infringement still fail because its bare conclusion that the asserted
works are "enforceable in the United States under the Berne Convention for the Protection of
Literary and Artistic Works" is insufficient to plead ownership of a foreign copyright exempt from
the registration requirement. Doc No. 1 at ¶¶ 25, 75.

Under the Copyright Act, foreign works are exempt from complying with § 411(a). *See
Fourth Estate*, 586 U.S. at 306–07 ("Congress removed foreign works from § 411(a)'s dominion
in order to comply with the Berne Convention for the Protection of Literary and Artistic Works'
bar on copyright formalities of such works."). If a plaintiff believes that it owns foreign works that
are exempt from complying with § 411(a), then the plaintiff "must allege that the work is not a
United States work within the meaning of § 101." *See UAB "Planner 5D" v. Facebook, Inc.*, No.
19-cv-03132-WHO, 2019 U.S. Dist. LEXIS 203618, at *17 (N.D. Cal. Nov. 21 2019) (citations
omitted); *see also Beijing Meishe Network Tech. Co., Ltd. v. TikTok Inc.*, No. 23-cv-06012-SI,
2024 U.S. Dist. LEXIS 73946, at *28 (N.D. Cal. Apr. 23, 2024) (granting defendant's motion to
dismiss plaintiff's copyright claim because plaintiff did not adequately allege "that its [allegedly
foreign] copyrighted works [were] not 'United States works' subject to the § 411 publication
requirement"); *DigitAlb, Sh.a v. Setplex, LLC*, 284 F. Supp. 3d 547, 555 (S.D.N.Y. 2018)

---

[1] *See Resnick v. Copyright Clearance Ctr., Inc.*, 422 F. Supp. 2d 252, 259 (D. Mass. 2006) (a claim
of vicarious copyright infringement requires a viable direct infringement claim).

(dismissing plaintiff's claims of direct and contributory copyright infringement; "[a]s a threshold matter, the Court rejects [plaintiff's] assertion that it is not required to allege exemption from § 411's registration precondition").

> For purposes of section 411, a work is a "United States work" only if—
> (1) in the case of a published work, the work is first published—
> (A) in the United States;
> (B) simultaneously in the United States and another treaty party or parties, whose law grants a term of copyright protection that is the same as or longer than the term provided in the United States;
> (C) simultaneously in the United States and a foreign nation that is not a treaty party; or
> (D) in a foreign nation that is not a treaty party, and all of the authors of the work are nationals, domiciliaries, or habitual residents of, or in the case of an audiovisual work legal entities with headquarters in, the United States[.]

17 U.S.C. § 101. Thus, under the statute, non-United States works are generally those first published outside the United States in a foreign country that is a signatory to the Berne Convention. *See DigitAlb*, 284 F. Supp. 3d at 555. But it is insufficient for a plaintiff to simply *omit* in the complaint that the asserted copyrighted work is *not* a United States work as defined in § 101. *Id.* Rather a plaintiff must plead facts that identify where and when the asserted copyright was first published. *Id.* (plaintiff's allegations that it "published [the asserted] works outside of the United States" were insufficient to rely on the § 411 registration exemption).

Here, like in *DigitAlb*, Plaintiff's Complaint falls far short of alleging that the asserted works are exempt from the § 411(a) registration prerequisite. Plaintiff fails to sufficiently allege that the asserted works are *not* United States works because Plaintiff does not allege *where* or *when* the works were first published. Instead, Plaintiff merely asserts that "Plaintiff copyrights [sic] in Plaintiff Works are enforceable in the United States under the Berne Convention for the Protection of Literary and Artistic Works." Doc No. 1 at ¶¶ 25, 75. The omission of further details regarding the publication of the asserted works is fatal to any claim by Plaintiff that it is exempt from the §

411(a) threshold registration requirement. Accordingly, Plaintiff's direct and vicarious copyright infringement claims (Counts VI and VII) should be dismissed.

### 2. Plaintiff Fails to Allege that WhaleCo Directly Engaged in Any Copying of the Asserted Works (Count VI)

Even if the Court were to conclude that Plaintiff met the § 411(a) threshold requirement, Plaintiff's direct copyright infringement claim against WhaleCo would still fail as Plaintiff has not sufficiently alleged that WhaleCo directly engaged in any copying of Plaintiff's Works. *See Feist*, 499 U.S. at 361; *see also Calden v. Arnold Worldwide LLC*, No. 12-cv-10874, 2012 U.S. Dist. LEXIS 167967, at *10 (D. Mass. Nov. 27, 2012) (dismissing plaintiff's copyright infringement claim where plaintiff "fail[ed] to sufficiently allege the second element of copyright infringement—copying of constituent elements of the work that are original"). "'While the Copyright Act does not require that the infringer know that he is infringing or that his conduct amounts to a willful violation of the copyright owner's rights, it nonetheless requires conduct by a person who causes in some meaningful way an infringement.'" *Okolita v. Amazon.com, Inc.*, No. 2:22-cv-00284, 2023 U.S. Dist. LEXIS 130477, at *25 (D. Me. July 28, 2023) (quoting *CoStar Grp., Inc. v. LoopNet, Inc.*, 373 F.3d 544, 549 (4th Cir. 2004)).

As relevant here, in the context of an online platform for users to post their own content—such as WhaleCo—the inquiry turns on "whether 'the defendant [platform] itself trespassed on the exclusive domain of the copyright owner.'" *Harrison v. Facebook, Inc.*, No. 19-cv-01547, 2019 U.S. Dist. LEXIS 234962, at *2 (N.D. Cal. July 2, 2019) (quoting *American Broad. Cos. v. Aereo, Inc.*, 573 U.S. 431, 454 (2014) (Scalia, J., dissenting)); *CoStar*, 373 F.3d at 550 (analogizing between an online real estate platform and the owner of a traditional copy machine and holding that "a [service provider] who owns an electronic facility that responds automatically to users' input is not a direct infringer"). Thus, passive actions that produce an infringing result do not

trigger direct infringement liability, and Plaintiff must allege that WhaleCo itself "engaged in **affirmative, volitional** conduct that violates the Copyright Act," to bring a valid claim of copyright infringement against WhaleCo. *See Harrison*, 2019 U.S. Dist. LEXIS 234962, at *2–4 (emphasis added) (dismissing direct copyright infringement claim against Facebook where plaintiff provided "no support for the allegation that Facebook engaged in volitional conduct needed to state a claim for direct copyright infringement"); *Okolita*, 2023 U.S. Dist. LEXIS 130477, at *24–25 (dismissing copyright infringement claim against eBay where plaintiff's allegations confirmed that eBay did not post the allegedly infringing photos and "was in the position of a service provider made aware by and reacting to notifications arriving from a copyright holder"); *Bus. Casual Holdings, LLC v. YouTube, LLC*, No. 21-cv-3610, 2022 U.S. Dist. LEXIS 50166, at *7–8 (S.D.N.Y. Mar. 21, 2022) ("In the context of online platforms that host content uploaded or transmitted by third-party users, a platform cannot be liable for direct copyright infringement based on the allegedly infringing activities of its users unless the platform had some deliberate role in the alleged infringement, such that the platform morphed from a passive provider of a space in which infringing activities happened to occur to an active participant in the process of copyright infringement.") (internal quotation marks omitted).

Plaintiff has not sufficiently alleged that WhaleCo actively or volitionally engaged in any copying of the asserted works. Rather, Plaintiff's allegations confirm that the Seller Defendants create the product listings and sell the products on Temu.com. Doc No. 1 at ¶ 27. Plaintiff simply relies on several conclusory and unsupported allegations for its copyright infringement claim against WhaleCo. For example, Plaintiff merely recites that WhaleCo and the Store Defendants were "acting in concert" (Doc No. 1 at ¶ 36), and that "[e]ach defendant . . . display[ed], and distribut[ed] the Plaintiff Works without authorization," *id.* at ¶ 77. Not only are these allegations

14

vague and conclusory, but they are also implausible based on WhaleCo's position and business model as a service provider of an e-commerce platform (akin to eBay) that hosts third-party product listings. Indeed, even Plaintiff's own allegations contradict its claim that WhaleCo is liable for direct infringement as Plaintiff alleges that the individual sellers "agree to source and supply WhaleCo with products" and "provide WhaleCo with written descriptions for the products and media." *Id.* ¶ 27. And, notably, Plaintiff limits its allegations of DMCA infringement to the Seller Defendants, not WhaleCo, including the allegation that the Seller Defendants "distributed and displayed copies of the Plaintiff's Works knowing that the copyright management information had been removed from or altered in the copies." *Id.* at ¶ 97.

### E.  Plaintiff Fails to Allege a Claim under the UDTPA (Count III)

As an initial matter, Plaintiff's claims under the Illinois Unfair and Deceptive Trade Practices Act ("UDTPA") fail for the same reasons as Plaintiff's claims under the Lanham Act. *See SB Designs v. Reebok Int'l, Ltd.*, 338 F. Supp. 2d 904, 914 (N.D. Ill. 2004) ("Where a plaintiff's factual allegations under the Illinois Uniform Deceptive Trade Practices Act also form the basis for plaintiff's claim under the Lanham Act, the legal inquiry is the same under both statutes.").

Additionally, Plaintiff's claim is not "factually sufficient such that one could plausibly conclude that the circumstances that relate to the allegedly fraudulent transaction occurred primarily and substantially in Illinois." *Maui Jim, Inc. v. SmartBuy Guru Enters.*, No. 1:16 CV 9788, 2018 U.S. Dist. LEXIS 10093, at *14–15 (N.D. Ill. Jan. 23, 2018). Under the Illinois UDTPA, it is unlawful to misrepresent goods and services to consumers through false or deceptive advertising. *See* 815 ILCS § 510. "Although [the Illinois UDTPA] does not contain text expressly confining its application to events or circumstances arising in Illinois, there is a long-standing rule of construction in Illinois which holds that a statute is without extraterritorial effect unless a clear

intent in this respect appears from the express provisions of the statute." *IPOX Schuster, LLC v. Nikko Asset Mgmt. Co.*, 191 F. Supp. 3d 790, 807 (N.D. Ill. 2016) (internal quotation marks and citation omitted).

It thus follows that to sufficiently plead a claim under the UDTPA, a plaintiff must allege facts to demonstrate that "the circumstances that relate to the disputed transaction occur primarily and substantially in Illinois." *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 187 (2005). "Courts weigh four factors in determining whether a transaction occurred 'primarily and substantially' in Illinois: (1) the plaintiff's residence, (2) where the misrepresentation was made, (3) where the damage occurred, and (4) whether the plaintiff communicated with the defendant in Illinois." *IPOX*, 191 F. Supp. 3d at 808 (internal quotation marks and citation omitted). "An allegation is ***not*** well-pled if it alleges only that conduct occurred in Illinois along with other states around the country." *See MaiBo*, 2024 U.S. Dist. LEXIS 77462, at *13–14 (dismissing plaintiff's UDTPA claim because plaintiff "fail[ed] to allege the relevant conduct in this case occurred '*primarily and substantially*' in Illinois") (emphasis added); *FireBlok IP Holdings, LLC v. Hilti, Inc.*, No. 3:19-cv-50122, 2021 U.S. Dist. LEXIS 243052, at *12 (N.D. Ill. Dec. 21, 2021) (holding that an allegation that products were sold "throughout the United States, including in this district" was insufficient to state a claim for relief because "far from primarily and substantially arising in Illinois, the transactions [were] alleged to occur throughout the United States, and Illinois just happen[ed] to be one of those states"); *Maui Jim*, 2018 WL 509960, at *14–17 (same).

Here, Plaintiff's UDTPA claim does just that: Plaintiff merely alleges that Defendants' conduct occurs in Illinois along with other states in the U.S. Doc No. 1 at ¶ 10. Plaintiff's support for its UDTPA claim is that WhaleCo "operate[s] a commercial, fully-interactive online marketplace" that is available to Illinois residents, "offers shipping to addresses within Illinois[,]"

and that "Defendants have shipped at least one Infringing Product to residents of Illinois." *Id.* The Northern District of Illinois found similar allegations against WhaleCo insufficient in *MaiBo* and dismissed the UDTPA claim. *See Maibo*, 2024 U.S. Dist. LEXIS 77462, at *13–14. There, the "complaint alleg[ed] *only* that 'Defendants [were] concurrently conducting and targeting their counterfeiting and infringing activities toward consumers and likely causing unified harm within this district and elsewhere throughout the United States.'" *Id.* at *13 (emphasis in original). In its analysis, the court reasoned that the plaintiff "fail[ed] to connect the conduct at issue to Illinois specifically." *Id.* at *14.

Moreover, in this case, none of the factors weigh in favor of determining the conduct at issue occurred "primarily and substantially in Illinois." *See In re Sears Roebuck & Co. Tools Mktg. and Sales Practices Litig.*, No. MDL-1703, 05C 4742, 05 C 2623, 2005 U.S. Dist. LEXIS 28064, at *3–7 (N.D. Ill. Nov. 14, 2005) (dismissing UDTPA claim where no plaintiff was an Illinois resident and where "[t]here were no allegations that any plaintiff read any misrepresentations in Illinois, purchased any tools in Illinois, or had contact with a Sears agent in Illinois[,]" noting that the court could not "infer a nexus with Illinois" just because it was the location of Sears' principal place of business). Indeed, the Northern District of Illinois, in granting WhaleCo's motion to transfer, determined that "[Plaintiff] is a Chinese company with no apparent ties to Illinois, and the substantial part of allegedly wrongful conduct at issue took place in China, or in Massachusetts where WhaleCo is based. The only connection between the conduct at issue in this case and Illinois is that the Store Defendants allegedly shipped at least one product to this forum. . . . [Those shipments] do not demonstrate that the cause of action conclusively arose in [Illinois]." Doc No. 33 at 15–16. As there is no allegation that Plaintiff (or any other Illinois resident) was misled by any alleged misrepresentation by Defendants, let alone allegations that the situs of such conduct

17

was in Illinois, it thus follows that Plaintiff does not allege that it suffered damages in Illinois. Lastly, the Complaint is devoid of allegations that Plaintiff communicated with WhaleCo in Illinois. Accordingly, Plaintiff's UDTPA claim against WhaleCo should be dismissed.

## V.    CONCLUSION

For the reasons above, the Court should dismiss Plaintiff's claims against WhaleCo under Rule 12(b)(6).

Dated: July 1, 2024                              Respectfully submitted,

By: */s/ Andy LeGolvan*
Andy LeGolvan (*pro hac vice*)
White & Case LLP
555 South Flower Street, Suite 2700
Los Angeles, CA 90071
(909) 576-2147
Andy.legolvan@whitecase.com

Lauren Papenhausen (BBO# 655527)
Daniel Medici (BBO# 705650)
White & Case LLP
75 State Street
Boston, MA 02109-1814
Telephone: (617) 979-9310
Lauren.Papenhausen@whitecase.com
Dan.Medici@whitecase.com

Anna Naydonov (*pro hac vice*)
White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005
(202) 626-3600
Anna.Naydonov@whitecase.com

Rosie Norwood-Kelly (*pro hac vice*)
White & Case LLP
1221 Avenue of the Americas
New York, NY 10020
(212) 819-8200
Rosie.Norwood-Kelly@whitecase.com

*Counsel for Defendant WhaleCo Inc.*

18

## CERTIFICATE OF SERVICE

I hereby certify that on July 1, 2024, I caused WhaleCo's Memorandum of Law in Support of Motion to Dismiss to be electronically filed with the Clerk of Court via the Court's CM/ECF system, which will simultaneously send notification of such filing to all counsel of record, all of whom have consented to electronic service in this action.

*/s/ Andy LeGolvan*